COREY R. WEBER – BAR NO. 205912
MICHAEL W. DAVIS – BAR NO. 274126
BRUTZKUS GUBNER ROZANSKY SEROR WEBER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA  91367
Telephone:   818.827.9000
Facsimile:    818.827.9099
E-mail: cweber@brutzkusgubner.com
          mdavis@ brutzkusgubner.com

Attorneys for Defendant, William Firestone,
Individually and as Trustee of The Firestone
Family Trust, and as shareholder of the dissolved
Corporation, Firestone Holdings, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| WILLIAM J. HOFFMAN, Court-appointed permanent receiver for Nationwide Automated Systems, Inc., Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates, | Case No. 2:15-cv-8498-SJO |
| Plaintiff, | **MOTION TO DISMISS THE RECEIVER'S SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| WILLIAM FIRESTONE, individually and as Trustee of the Firestone Family Trust, and as shareholder of the dissolved corporation, Firestone Holdings, Inc.; and FIRESTONE HOLDINGS, INC., a California corporation, | *[Notice of Motion to Dismiss the Receiver's Second Amended Complaint or, in the Alternative, Motion to Strike and Request for Judicial Notice Filed Concurrently Herewith]* |
| Defendants. | **Hearing:** Date: April 11, 2016 Time: 10:00 a.m. Courtroom: 1 |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................... 1

II.   DISMISSAL OF TIME-BARRED CLAIMS AND
      RECOVERY PRECLUDED BY STATUTE IS
      APPROPRIATE ON A MOTION TO DISMISS............................5

III.  THE RECEIVER'S CLAIMS BEYOND FOUR YEARS
      PRIOR TO THE FILING OF THE COMPLAINT ARE
      TIME-BARRED ................................................................ 6

      A.    The Court's Order on Firestone's Motion to Dismiss the
            First Amended Complaint Required Specific Allegations
            from the Receiver Regarding Date of Discovery, But the
            SAC Fails to Include Specific Allegations............................. 6

      B.    The California Civil Code Only Permits the Recovery of
            Transfers Beyond Four Years Prior to the Filing of the
            Complaint if the Complaint Was Filed Within One Year of
            When the Receiver Discovered or Reasonably Should Have
            Discovered the Fraudulent Nature of the Transfers ................ 8

      C.    Court Orders, and Pleadings Filed by the SEC Subject to
            Judicial Notice, Demonstrate That the Receiver Knew or
            Had Reason to Suspect That NASI Operated as a Ponzi
            Scheme by September 30, 2014, Over One Year Prior to
            the Filing of the Complaint................................................ 13

      D.    The Receiver's Claims for Transfers Pursuant to the
            Discovery Clause Are Time-Barred.. .................................. 15

      E.    The Statute Is Not Extended or Tolled for a Creditor or
            Receiver to Conduct an Accounting.................................... 16

      F.    The Del Greco Declaration Demonstrates That Evidence
            of the Transfers Was Available Upon the Appointment of
            the Receiver.. ................................................................ 18

i

---

# **TABLE OF CONTENTS** - *Continued*

Page

    G.    The Receiver Admits in His First Report and Recommendations That He Received an Investor List and Monthly Investor Payments from NASI's Principals Over One Year Prior to Filing the Complaint.. ................................................ 19

IV.    CONCLUSION ................................................................................... 20

DECLARATION OF COREY R. WEBER ............................................... 21

# TABLE OF AUTHORITIES

_Page_

## CASES

Ashcroft v. Iqbal,
  556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (S. Ct. 2009)............................................ 5

CAMSI IV v. Hunter Technology Corp.,
  230 Cal.App.3d 1525, 1536-1537 (Cal.Ct.App. 1991)........................................ 8, 9

Coto Settlement v. Eisenberg,
  593 F.3d 1031, 1038 (9th Cir. 2010) ...................................................................... 13

Donell v. Keppers,
  835 F.Supp.2d 871, 878 (S.D. Cal. 2011) ......................................................... 11, 17

Donell v. Kowell,
  533 F.3d 762 (9th Cir. 2008)..................................................................................... 17

Donell v. Mojtagedian,
  976 F.Supp.2d 1183 (C.D. Cal. 2013) ..................................................................... 12

Fox v. Ethicon Endo-Surgery, Inc.,
  35 Cal.4th 797, 808 (Cal. S.Ct. 2005) ....................................................................... 9

Freitag v. McGie,
  133 Wash.2d 816 (Wa. Sup. Ct. 1997) ......................................................... 9, 10, 16

In re Ezra,
  537 B.R. 924, 930, 933 (9th Cir. BAP 2015)......................................... 4, 9, 10, 16, 17

In re JMC Telecom LLC,
  416 B.R. 738, 742 (C.D. Cal. 2009)......................................................................... 11

Intri-Plex Technologies, Inc. v. Crest Group, Inc.,
  499 F.3d 1048, 1052 (9th Cir. 2007)........................................................................ 13

Navarro v. Block,
  250 F.3d 729, 732 (9th Cir. 2001).............................................................................. 5

# TABLE OF AUTHORITIES - *Continued*

Page

Orkin v. Taylor,
   487 F.3d 734, 741 (9th Cir. 2007)(citing *Jolly v. Eli Lilly & Co.*,
   44 Cal.3d 1103, 1109, Cal. Rptr. 658, 751 P.2d 923 (1998) ...................................... 8

Roach v. Lee,
   369 F.Supp.2d 1194, 1198 (C.D. Cal. 2005) ........................................... 11, 12

Sands v. McCormick,
   502 F.3d 263, 268 (3rd Cir. 2007)................................................................ 13

Schmidt v. HSC, Inc.,
   131 Hawaii 497, 510 (Hi. Sup. Ct. 2014) .................................9, 10, 11, 16

Von Saher v. Norton Simon Museum of Art of Pasadena,
   592 F3d 954, 969 (9th Cir. 2010)....................................................................... 8


## STATUTES

California Civil Code § 3439.09 ....................................................5, 6, 9, 11
California Civil Code § 3439.09(a)............................2, 4, 7, 90, 12, 16, 17
California Civil Code §§ 3439.09(a)-(b)........................................................ 11
Federal Rules of Civil Procedure 12(b)(6)................................................... 13


## OTHER STATE STATUTES

Hawaii Revised Statute (HRS) § 651C-9......................................................... 10
Revised Code of Washington (RCW) § 19.40.041 ....................................... 10

Defendant William Firestone, individually and as Trustee of The Firestone Family Trust, and as shareholder of the dissolved corporation Firestone Holdings, Inc. ("Firestone"), hereby moves to dismiss, or, in the alternative, moves to strike time-barred claims (the "Motion") in the complaint filed by Court-appointed Receiver William J. Hoffman (the "Receiver") on October 30, 2015 (the "Complaint", Docket No. 1 in Case No. 2:15-cv-08498), as amended in the Receiver's Second Amended Complaint filed on February 4, 2016 (the "SAC", Docket No 25).

## I.

## **INTRODUCTION**

The Receiver seeks to avoid and recover transfers from Nationwide Automated Systems, Inc. ("NASI") to Firestone occurring up to seven years prior to the filing of the Complaint.  Based on the applicable statute, California Civil Code § 3439.09(a), the Court granted Firestone's motion to dismiss the Receiver's First Amended Complaint in part, with leave to amend, requiring the Receiver to include specific allegations as to the Receiver's date of discovery.[1]  After now having had the opportunity in the Complaint, the First Amended Complaint and the Second Amended Complaint to include specific allegations as to the date that the Receiver discovered or reasonably should have discovered the fraudulent nature of the transfers, the Receiver has not done so.  In addition, after amending the Complaint twice now, the Receiver has also failed to include allegations specifically stating when the Receiver knew or should have known of the transfers to Firestone.[2]  Instead, the Receiver sidesteps those issues and only alleges when he reconstructed the payments to all investors, and when he completed an accounting of all transfers both to and from Firestone (SAC, ¶¶

---

[1] Court's Civil Minutes on Firestone's Motion to Dismiss entered on January 25, 2016 (Docket No. 24).

[2] The only date of discovery allegation in the SAC specific to Firestone is as to when the Receiver determined when Firestone received a net profit, not when the Receiver knew or should have known that Firestone received the transfers (SAC, ¶¶ 15-16).

15-16).  The Receiver admits in his allegations that he completed the full accounting by August 5, 2015 (SAC, ¶ 16), which is prior to the expiration of one year after the Receiver knew or should have known that NASI operated as a Ponzi scheme. However, the SAC's allegations show that instead of filing the Complaint, the Receiver sent a demand letter (SAC, ¶ 16).  While the Receiver could have filed the Complaint to timely preserve the claims, he did not do so and instead sent a demand letter.  After three iterations of the Complaint the Receiver appears unwilling to allege when he knew or should have known that NASI operated as a Ponzi scheme, and when he knew or should have known of the transfers from NASI to Firestone.  The Receiver cannot include those allegations because the allegations would demonstrate that the claims as to transfers taking place more than four years prior to the filing of the Complaint are time-barred.  Based on the judicially noticeable Orders and pleadings in the RJN, the Receiver knew or reasonably should have known that NASI operated as a Ponzi scheme, and of the transfers to Firestone, over one year prior to filing the Complaint against Firestone.

Pursuant to California Civil Code § 3439.09(a), Firestone moves to dismiss the portions of Count I of the SAC, and the Prayer for Relief, that seek to avoid and recover the alleged transfers to Firestone that took place more than four years prior to the filing of the Receiver's originally-filed Complaint.  Civil Code § 3439.09(a) provides only one year after date the Receiver knew or should have known of the fraudulent nature of the transfers to file claims as to transfers occurring more than four years prior to the filing of the Complaint.  The SAC does not include any allegations as to when the Receiver had reason to know or suspect NASI operated as a Ponzi scheme.  However, Orders of the Court, and pleadings by the Securities and Exchange Commission (the "SEC"), subject to judicial notice make clear that the Receiver knew or had reason to suspect that NASI operated as a Ponzi scheme, and made transfers as part of that Ponzi scheme, by no later than September 30, 2014, over one year prior to the filing of the Complaint on October 30, 2015.

2

1      The SAC also does not include any allegations as to when the Receiver knew or

2 should have known of the transfers to Firestone.  Instead, the Receiver makes

3 allegations as to when he completed reconstructing all payments to all investors, and

4 when he reconstructed all net profits for Firestone and investors (SAC, ¶¶ 15-16).

5 There is no support in the statute or case law for the proposition that a receiver must

6 conduct a full accounting prior to filing a complaint, or that there is a tolling in effect

7 while a receiver conducts an accounting.  The effect of that proposition would be to

8 indefinitely[3] toll the statute of limitations without a statutory basis to do so.

9      In the Court's Order on Firestone's motion to dismiss the First Amended

10 Complaint, the Court stated that it would consider documents subject to judicial notice

11 after the Second Amended Complaint was filed.[4]  The SEC's pleadings, and this

12 Court's Civil Minutes entered on September 30, 2014, find that NASI operated as a

13 Ponzi scheme (see Case No. 2:14-cv-07249-SJO (the "SEC Case"), Docket Nos. 7 and

14 14).  The Court's Orders entered on September 30, 2014, and again on October 29,

15 2014 further reflect the Court's findings that NASI operated as a Ponzi scheme (see

16 the SEC Case Docket Nos. 17 and 42).  To the extent that the Receiver contends he

17 did not know or reasonably should have known that NASI operated as a Ponzi scheme

18 by September 30, 2014 or by October 29, 2014 (both over one year prior to the filing

19 of the Complaint), and made transfers as part of that scheme, the Court's Orders and

20 the SEC's pleadings demonstrate that the Receiver reasonably should have known that

21 NASI operated as a Ponzi scheme.  In addition, a declaration filed with this Court by

22 the SEC on September 30, 2014, the declaration of Peter F. Del Greco (Docket No. 13

23 in Case No. 2:14-cv-07249-SJO), states that on or about July 14, 2014 the SEC also

24 already had received the bank statements for the bank account from which transfers

25 were allegedly made from NASI to Firestone for the period from January 2009

26

27 [3] Within the confines of the statute.

28 [4] Court's Civil Minutes on Firestone's Motion to Dismiss entered on January 25, 2016 (Docket No. 24), p. 4 of 5, fn. 1.

1  through June 2014.[5]  As further discussed herein, all of those NASI bank statements,

2  including those that include the transfers that the Receiver alleges were made from

3  NASI to Firestone, were offered by the declaration by the SEC for the Court's review

4  in making a Ponzi scheme determination.[6]  That was all publicly available to the

5  Receiver well over one year prior to the filing of the Complaint.  In addition, the

6  Receiver's First Report and Recommendations admits that NASI's principals met with

7  the Receiver, the Receiver's staff and counsel on October 21, 2014, and that NASI's

8  principals provided, among other things "a list of investors with addresses, templates

9  used when forwarding monthly payments to ATM locations, and monthly investor

10  payments."[7]

11       In the most recent case to address the one year date of discovery issue in Civil

12  Code § 3439.09(a), In re Ezra, the United States Bankruptcy Appellate Panel of the

13  Ninth Circuit stated in a published opinion that "[w]e believe that the one-year period

14  under Cal. Civ.Code § 3439.09(a)'s discovery rule does not commence until the

15  plaintiff has reason to discover the fraudulent nature of the transfer." In re Ezra, 537

16  B.R. 924, 933 (9th Cir. BAP 2015).  Based on the Receiver knowing or having reason

17  to suspect the fraudulent nature of the transfers alleged in the Complaint, the Receiver

18  was required to file his Complaint by no later than September 30, 2015 (by one year

19  after the Court's Civil Minutes entered on September 30, 2014, SEC Case, Docket No.

20  14) in order to seek to avoid and recover the transfers occurring more than four years

21  prior to filing the Complaint.  The Receiver did not file the Complaint until October

22  30, 2015, over one year from his date of discovery.  Therefore, the Receiver is only

23  entitled to seek avoidance and recovery of transfers taking place up to four years prior

24  to filing the Complaint. See California Civil Code § 3439.09(a).  All claims and

25  Prayers for Relief seeking avoidance and recovery beyond the four year period are

26  ---
[5] RJN, Exhibit 6, Del Greco Declaration, p. 4, ¶¶ 13-14 and Exhibit 12A thereto.
27 [6] RJN, Exhibit 6, Del Greco Declaration, p. 4, ¶¶ 13-14 and Exhibit 12A thereto.
[7] RJN, Exhibit 7, Receiver's First Report and Recommendations, pp. 10 of 19 and 11
28      of 19 stamped at the top of the pages (or pages 8-9 using the page numbering at the
        bottom of the pages), lines 26-28 and 1-5.

appropriately dismissed with prejudice. Granting the Motion will not result in the elimination of all claims by the Receiver against Firestone, rather it will only dismiss with prejudice those claims that are time-barred pursuant to statute.

Based on the grounds set forth herein and in the Request for Judicial Notice ("RJN"), Firestone respectfully requests that:

1. The Court dismiss with prejudice the portion of the claims in Count I of the SAC, and the prayer for relief, that seek avoidance and recovery of transfers taking place more than four years prior to the filing of the Complaint.

2. For such other and further relief that the Court deems appropriate.

## II.

## DISMISSAL OF TIME-BARRED CLAIMS AND RECOVERY PRECLUDED BY STATUTE IS APPROPRIATE ON A MOTION TO DISMISS

This Motion addresses the legal sufficiency of the Receiver's claims against Firestone in the SAC. The Receiver's claims, and Prayers for Relief, include requests for the avoidance and recovery of transfers pursuant to Civil Code § 3439.09 that are time-barred pursuant to the statute. "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (S. Ct. 2009).

1   The Receiver's claims and Prayers for Relief that are time-barred pursuant to

2   Civil Code § 3439.09 are appropriately dismissed on motion to dismiss without leave

3   to amend.  The Receiver has now had an opportunity to include allegations as to the

4   date of discovery and evidencing that the claims are not time-barred in the Complaint,

5   the First Amended Complaint and the SAC.  Despite the opportunity to include those

6   allegations, the Receiver has not done so.

### III.

### THE RECEIVER'S CLAIMS BEYOND FOUR YEARS PRIOR
### TO THE FILING OF THE COMPLAINT ARE TIME-BARRED

**A.    The Court's Order on Firestone's Motion to Dismiss the First Amended Complaint Required Specific Allegations from the Receiver Regarding Date of Discovery, But the SAC Fails to Include Specific Allegations.**

This Court's Order on Firestone's motion to dismiss the Receiver's First

Amended Complaint states the allegations that should have been added in the SAC:

> Specifically, Plaintiff's prayer for relief for the Net Profit Amount clearly includes transfers more than four years removed from the filing of the Complaint. However, Plaintiff fails to note in the FAC facts regarding when and how the fraudulent transfers were discovered, as well as whether Plaintiff could have made the discovery earlier. (See generally FAC.) "If the complaint on its face shows that the claim would be barred without the tolling of the discovery rule, the plaintiff must plead facts which show: (1) the time and manner of discovery; and (2) the inability to have made discovery earlier despite reasonable diligence." *CAMSI IV v. Hunter Tech. Corp.*, 230 Cal. App. 3d 1525, 1536-37 (Cal. Ct. App. 1991), *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808 (Cal. S.Ct. 2005)."[8]

Notwithstanding the Court's Order, the SAC fails to include specific allegations

regarding the date of discovery of the fraudulent nature of the transfers (that NASI

operated as a Ponzi scheme) and whether the Receiver could have made the discovery

earlier.  In addition, although the relevant case law discussed herein refers to

---

[8] Court's Civil Minutes on Firestone's Motion to Dismiss entered on January 25, 2016 (Docket No. 24), p. 4 of 5.

1  discovery of the fraudulent nature of the transfers rather than the transfers themselves,

2  the Receiver also fails to include allegations stating when he discovered or reasonably

3  should have discovered the transfers to Firestone (as opposed to all investors in

4  general or a full accounting of transfers to and from Firestone).  The only specific

5  references as to discovery of transfers specifically to Firestone relate to completion of

6  a full accounting of both transfers to Firestone and deposits by Firestone, rather than

7  date of discovery of the transfers to Firestone.  The SAC states:

8
9          Reconstruction of these years of payments to investors was not
            completed until the second quarter of 2015, and it was not until the
10         third quarter of 2015 that the Receiver was able to complete the
            reconstruction of both payments received from and made to
11         Defendants such that a determination could be made as to whether
            Defendants received profits in excess of their initial deposits.[9]
12

13         Specifically, including payments to and from Defendants going back
            to 1997, it was not until August 5, 2015 that the Receiver discovered
14         that Defendants had received profits over and above their initial
            deposits.  Once discovered, the Receiver promptly made a demand on
15         Defendants for disgorgement in a letter dated the same date.[10]
16

17  The Receiver declines to state as to when he knew or should have known of transfers

18  from NASI to Firestone.  The Receiver's statements obscure the date of discovery by

19  only stating when he completed an accounting of all transfers in and out of NASI

20  involving Firestone, which the Receiver states was August 2015 (SAC, ¶ 16).  Even

21  under the Receiver's contention that he needed to complete his accounting prior to

22  filing a complaint (this still does not toll or extend Civil Code § 3439(a)), he could

23  have filed the Complaint in August 2015.  If the Receiver had done so, that would

24  have been within one year following September 30, 2014, and the Receiver would

25  have preserved his claims.  Instead of filing a complaint at that point to preserve the

26  claims or obtaining a tolling stipulation, the SAC alleges that the Receiver sent a

27

28  [9] SAC, p. 5, ¶ 14, lines 6-10.
    [10] SAC, p. 5, ¶ 16, lines 11-15.

1   demand letter (SAC, ¶ 16).  While filing a complaint or obtaining a tolling stipulation

2   at that point would have preserved all of the claims against Firestone, sending a

3   demand letter did not extend the statute of limitations.

**B.    The California Civil Code Only Permits the Recovery of Transfers Beyond Four Years Prior to the Filing of the Complaint if the Complaint Was Filed Within One Year of When the Receiver Discovered or Reasonably Should Have Discovered the Fraudulent Nature of the Transfers.**

9       The SAC fails to allege any basis for invoking the delayed discovery rule in

10  Civil Code § 3439.09(a), which is the sole basis by which the Receiver may seek to

11  avoid and recover transfers that occurred more than four years prior to the filing of the

12  Complaint.  Specifically, the SAC fails to allege that the Receiver filed the Complaint

13  within one year after he knew or reasonably should have known of the fraudulent

14  nature of the transfers.  As discussed herein, judicially noticeable Orders, pleadings

15  and the Receiver own First Report and Recommendations all demonstrate that the

16  Receiver knew that NASI operated as a Ponzi scheme, and had a list of investors and

17  payments to investors, all prior to one year before filing the Complaint.

18      "The California Supreme Court has not addressed the issue, but "has, however,

19  specifically held that the discovery rule, whenever it applies, incorporates the

20  principle of constructive notice."  *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir.

21  2007)(citing *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1109, Cal. Rptr. 658, 751 P.2d

22  923 (1998))."  Von Saher v. Norton Simon Museum of Art of Pasadena, 592 F3d 954,

23  969 (9th Cir. 2010).  Delays in filing claims under California law based on date of

24  discovery generally require that the complaint specify the date of discovery.  *See, e.g.*,

25  CAMSI IV v. Hunter Technology Corp., 230 Cal.App.3d 1525, 1536-1537

26  (Cal.Ct.App. 1991) ("A plaintiff whose complaint shows on its face that his or her

27  claim would be barred by the applicable orthodox statute of limitations, and who

28  intends to rely on the discovery rule to toll the orthodox limitation period, "must

1   specifically plead facts which show (1) the time and manner of discovery and (2) the

2   inability to have made earlier discovery despite reasonable diligence. [Citations.]

3   Mere conclusory assertions that delay in discovery was reasonable are insufficient and

4   will not enable the complaint to withstand general demurrer." Camsi at 1536-37); See

5   also Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 808 (Cal. S.Ct. 2005).

6         California Civil Code § 3439.09(a) states that a fraudulent transfer cause of

7   action is extinguished unless an action is brought "[u]nder paragraph (1) of

8   subdivision (a) of Section 3439.04, within four years after the transfer was made or

9   the obligation was incurred or, if later, within one year after the transfer or obligation

10  was or could reasonably have been discovered by the claimant."

11        Case law interpreting the date of discovery in § 3439.09(a) has focused on

12  when the plaintiff could have discovered the fraudulent nature of the transfer.  The

13  most recent court to address Civil Code § 3439.09 is the United States Bankruptcy

14  Appellate Panel of the Ninth Circuit (the "BAP") in the published opinion during

15  2015 in In re Ezra, 537 B.R. 924 (9th Cir. BAP 2015).  In Ezra, the BAP stated that

16  "[t]he statute of limitations issue raises the subsidiary question of when the fraudulent

17  transfer "could reasonably have been discovered." Cal. Civ.Code § 3439.09(a)." Ezra

18  at 933.  The BAP continued, stating that:

19        We believe that the one-year period under Cal. Civ.Code § 3439.09(a)'s
        discovery rule does not commence until the plaintiff has reason to discover the
20      fraudulent nature of the transfer.  The California Supreme Court has not yet
        construed the discovery provision as set forth in Cal. Civ.Code § 3439.09(a).
21      Nor have we found any published decisions from the California Courts of
        Appeal on this issue.  Consequently, as noted above, we must predict how the
22      California Supreme Court will decide this issue." Ezra at 933.
23

24        The BAP concluded that "[b]ased on the persuasiveness of cases like Schmidt

25  and Freitag, supra, we predict that the California Supreme Court will ultimately hold

26  that the one-year period under Cal. Civ.Code § 3439.09(a)'s discovery rule does not

27  commence until plaintiff has reason to discover the fraudulent nature of the transfer."

28  Ezra at 934.

9

In <u>Freitag v. McGie</u>, 133 Wash.2d 816 (Wa. Sup. Ct. 1997), a case cited to in <u>Ezra</u>, the Washington Supreme Court considered the substantially similar discovery provision under the Washington Uniform Fraudulent Transfers Act ("UFTA"). Specifically, "whether RCW 19.40.091(a)[11] begins to run when the plaintiff first discovers or could reasonably discover the transfer, or when the plaintiff first discovers or could reasonably discover the fraudulent nature of the transfer." <u>Freitag</u> at 821.  The Washington Supreme Court held that "[c]ommon sense and the statutory purpose of the UFTA necessitate a finding that the statute begins to run with the discovery of the fraudulent nature of the conveyance." <u>Freitag</u> at 821-822.  The Washington Supreme Court therefore stated, "[w]e hold RCW 19.40.091(a) provides a one-year period from the date of discovery of the fraudulent nature of the transfer within which to initiate a claim under the UFTA." <u>Freitag</u> at 824.

Similarly, in <u>Schmidt v. HSC, Inc.</u>, 131 Hawaii 497, 510 (Hi. Sup. Ct. 2014), a case cited to in <u>Ezra</u>, the Supreme Court of Hawaii held that as to the substantially similar discovery provision in the Hawaii UFTA, "the one year statute of limitations period begins on the date of the fraudulent nature of the transfer "was or could reasonably have been discovered by the claimants."  The Hawaii Supreme Court, in interpreting the discovery section of the Hawaii UFTA (*see* HRS § 651C-9(1)[12]), found that "Respondents contention that this court must interpret the one year period in HRS § 651C-9(1) as beginning from the date the plaintiffs discover the transfer itself to promote uniformity with other jurisdictions interpretations of the UFTA is

---

[11] Revised Code of Washington (RCW) § 19.40.041 states that "A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought: (a) under RCW 19.40.041(a)(1), within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."

[12] Hawaii Revised Statute (HRS) § 651C-9 states "A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought: (1) under section 651C-4(a)(1), within four years after the transfer was made or the obligation was incurred or, if later. Within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."

1   incorrect." <u>Schmidt</u> at 508.  The Hawaii Supreme Court rejected the arguments made

2   that the one-year period begins to run when the plaintiff discovers the transfer itself

3   as opposed to the fraudulent nature of the transfer, notwithstanding the text of the

4   statute (<u>Schmidt</u> at 507-508), stating:

5   
6       In sum, interpreting the discovery rule as allowing plaintiffs to file an action
    within one year of the discovery of the "fraudulent nature" of a transfer, rather

7       than of the transfer itself, is consistent with the statutory language referring to
    the transfer as a "fraudulent transfer."  Additionally, this interpretation is

8       consonant with the statutory purpose of preventing fraud.  Finally, such an

9       interpretation promotes the specific purpose of the discovery rule within the
    statutory context, i.e., allowing plaintiffs to pursue otherwise untimely claims

10      after discovering their existence." <u>Schmidt</u> at 508.

11  The Washington and Hawaii Supreme Courts have interpreted the almost identical

12  discovery provisions in their state versions of the UFTA as requiring that the

13  complaint be filed within one year after the date of discovery of the fraudulent nature

14  of the transfer, rather than the discovery of the transfers themselves.  The BAP, in a

15  published opinion earlier this year, agreed with that analysis.  As discussed further

16  below, the Complaint in this case against Firestone was filed over one year after the

17  Receiver was aware of the fraudulent nature of the transfers.

18        There are several District Court cases from California that cite, but do not

19  interpret, the discovery provision in California Civil Code § 3439.09.  *See, e.g.,*

20  <u>Donell v. Keppers</u>, 835 F.Supp.2d 871, 878 (S.D. Cal. 2011) ("However, a cause of

21  action under the UFTA is extinguished unless brought within four years of the

22  fraudulent transfer or, for an intentional fraud, within one year after the transfer was or

23  could reasonably have been discovered.  CAL. CIV. CODE § 3439.09(a)-(b).")  *See*

24  *also* <u>In re JMC Telecom LLC</u>, 416 B.R. 738, 742 (C.D. Cal. 2009) ("The California

25  Uniform Fraudulent Transfers Act ("CUFTA") sets forth a statute of limitations that

26  requires a plaintiff to file within four years of the transfer or, for an intentional fraud,

27  within one year after the transfer was or could reasonably have been discovered.

28  Cal.Civ.Code §§ 3439.09(a)-(b).") and <u>Roach v. Lee</u>, 369 F.Supp.2d 1194, 1198 (C.D.

1   Cal. 2005)(which, although it does not interpret the discovery provision, does
2   reference the date of discovery as the date of discovering the fraud. It states that the
3   plaintiff "alleges that he discovered the fraud in December 2002. He filed his
4   complaint on March 13, 2003." Roach at 1198.).

5         The Receiver's Motion for Authority to Pursue Clawback Claims and Approval
6   of Proposed Procedures (the SEC Case, Docket No. 64, p. 9, lines 2-4) relies heavily
7   on Donell v. Mojtagedian, 976 F.Supp.2d 1183 (C.D. Cal. 2013) for the proposition
8   that the one year limitations period did not begin to run upon the Receiver's
9   appointment. In Mojtagedian, the District Court stated that "[t]he statute of
10   limitations indicates that an individual has a year from the date he discovered or could
11   have discovered a Ponzi scheme to file suit. Cal. Civ.Code § 3439.09(a)."
12   Mojtagedian at 1188. The District Court rejected the argument that the receiver in
13   that case discovered or could have discovered that the company was operating as a
14   Ponzi scheme simply by virtue of his appointment to discover fraud. In the NASI
15   case, the Court expressly made a finding that NASI operated as a Ponzi scheme in its
16   Civil Minutes on September 30, 2014, the day that the Receiver was appointed (see
17   Docket Nos. 14 and 72[13]). Unlike in Mojtagedian, here the Court determined that
18   NASI was operating as a Ponzi scheme on the day that the Receiver was appointed.
19   In addition, Mojtagedian is not binding on this Court and does not appear to have been
20   cited in any subsequent case law since that decision was issued.

21         Although the appointment of the Receiver and the Ponzi scheme determination
22   occurred on the same day in the NASI case, that does not change that the Court made
23   a determination that NASI operated as a Ponzi scheme on September 30, 2014, and
24   that the Receiver had notice of that ruling.

25

26

---

27   [13] RJN, Exhibit 5, Docket No. 72, the Court's Civil Minutes entered on April 21,
28        2015, states on page 3 of 4 that "As this Court made clear in its Order of
        September 30, 2014, NASI operated as a Ponzi scheme and paid out large gains to
        early investors. (See generally Order Granting Pls.' Ex Parte Appl., ECF No. 14.)"

**C.**   **Court Orders, and Pleadings Filed by the SEC Subject to Judicial Notice, Demonstrate That the Receiver Knew or Had Reason to Suspect That NASI Operated as a Ponzi Scheme by September 30, 2014, Over One Year Prior to the Filing of the Complaint.**

The Receiver had notice beginning no later than September 30, 2014, and then continuing through October 29, 2014 that NASI was operated as a Ponzi scheme based on the Court's Civil Minutes and Orders entered on September 30, 2014 (the SEC Case, Docket Nos. 14 and 17), and on October 29, 2014 (the SEC Case, Docket No. 42). Both of the Court's Orders (the SEC Case, Docket Nos. 14 and 17) were entered over one year before the Receiver filed the Complaint. Firestone requests that the Court take judicial notice of its Orders entered in the SEC Case (No. Case No. 2:15-cv-07249-SJO), in addition to the pleadings filed by the SEC in the SEC Case. Since those very Orders, and the SEC's pleadings, are also in regard to the appointment of the Receiver, the Receiver was well aware of the Orders, pleadings and their contents, and knew or should have known that NASI operated as a Ponzi scheme.

"On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public record. *See Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007)." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). "Generally, a court may not consider material beyond the complaint in ruling on a Fed.R.Civ.P. 12(b)(6) motion. *Lee*, 250 F.3d at 688. However, "[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," as long as the facts noticed are not "subject to reasonable dispute." *Lee*, 250 F.3d at 689 (citation omitted)..." Intri-Plex Technologies v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007). *See also*, Sands v. McCormick, 502 F.3d 263, 268 (3rd Cir. 2007)("We explained that a court may take judicial notice of another court's opinion

1 | to use it as proof that evidence existed to put a party on notice of the facts underlying
2 | a claim.")

3 |     On September 30, 2014, the SEC filed a memorandum of points and authorities
4 | seeking, among other things, appointment of the Receiver (the SEC Case, Docket No.
5 | 7). The very first paragraph in the introduction to the SEC's brief states emphatically
6 | that NASI operated as a Ponzi scheme:

> This is a government enforcement action brought by Plaintiff Securities and
> Exchange Commission ("SEC") to stop Defendants from continuing an
> illegal Ponzi scheme that is happening right now. As part of this ongoing
> offering fraud, Defendants have raised at least $123 million in investor funds
> since 2013. In August and September 2014 alone, the Defendants raised
> about $3.36 million from defrauded investors, and have since used those
> funds, rather than any real investment profits, to pay returns back to existing
> investors in pure Ponzi fashion.[14]

In the Court's Civil Minutes entered on September 30, 2014 (the SEC Case, Docket
No. 14), the Court stated that "Plaintiff's complaint makes the following allegations.
Defendants Nationwide Automated Systems, Inc. ("NASI"), Joel Gillis, and Edward
Wishner (collectively, "Defendants") operated a Ponzi scheme to sell, in an
unregistered securities offering, investment opportunities in automated teller
machines ("ATMs") through purported "sale and leaseback" transactions. (Compl. ¶
3.)"[15] In regard to appointing the Receiver as a temporary receiver, the Court stated
that "[i]n this case, given that NASI investors' funds appear to have been
misappropriated at a large scale, there is a need to marshal and preserve assets from
further misappropriation. Thus, the Court grants the SEC's request to appoint a
temporary receiver, and appoints William Hoffman temporary receiver of NASI."[16]

    In conjunction with the Civil Minutes, also on September 30, 2014, the Court
entered a Temporary Restraining Order and Orders (1) Freezing Assets; (2)

---

[14] RJN, Exhibit 1, SEC brief filed on September 30, 2014 (Docket No. 7, p. 8 of 32, lines 2-8).
[15] RJN, Exhibit 2, Court's Civil Minutes entered on September 30, 2014 (Docket No. 14, p. 1 of 13).
[16] RJN, Exhibit 2, Court's Civil Minutes entered on September 30, 2014 (Docket No. 14, p. 13 of 13).

1  Prohibiting the Destruction of Documents; (3) Granting Expedited Discovery; (4)

2  Requiring Accountings; and (5) Appointing a Temporary Receiver, and Order to

3  Show Cause Re Preliminary Injunction and Appointment of Permanent Receiver (the

4  SEC Case, Docket No. 17) (the "TRO Order").

5        Following on the TRO Order, on October 29, 2014, the Court entered the

6  Preliminary Injunction and Orders (1) Freezing Assets; (2) Prohibiting the Destruction

7  of Documents; (3) Requiring Accountings; and (4) Appointing a Receiver (the SEC

8  Case, Docket No. 42) (the "Preliminary Injunction Order").  The Receiver was

9  appointed as the permanent receiver pursuant to the Preliminary Injunction Order.

10  The Court later stated in its Civil Minutes entered on April 21, 2015, which granted

11  the Receiver the authority to file clawback actions (the SEC Case, Docket No. 72),

12  that "As this Court made clear in its Order of September 30, 2014, NASI operated a

13  Ponzi scheme and paid out large gains to early investors.  (*See generally* Order

14  Granting Pls.' Ex Parte Appl., SEC Case, Docket No. 14.)  The Court finds that it is

15  appropriate for the receivership estate to pursue clawback claims against investors in

16  the Ponzi scheme."[17]

17        The judicially noticeable Orders and SEC pleadings demonstrate that the

18  Receiver knew or should have known on September 30, 2014 that NASI operated as a

19  Ponzi scheme, and knew or should have known about the fraudulent nature of the

20  transfers allegedly made from NASI to Firestone and other investors.

21  **D.    The Receiver's Claims for Transfers Pursuant to the Discovery**

22  **Clause Are Time-Barred.**

23        Based on the clear findings in the Orders entered by this Court, and the SEC's

24  pleadings, the Receiver had notice on September 30, 2014, upon his appointment, that

25  NASI was operated as a Ponzi scheme (the SEC Case, Docket Nos. 7, 14 and 17).

26  Notwithstanding that the Receiver had notice of the fraudulent nature of the transfers,

27  the Receiver did not file his Complaint until October 30, 2015, over one year after his

28  _____

[17] RJN, Exhibit 5, Court's Civil Minutes entered on April 21, 2015 (Docket No. 72, p. 3 of 4).

1   date of discovery of the fraudulent nature of the transfers. *See* Ezra, Freitag and

2   Schmidt, discussed *infra* above. Therefore, the discovery provision in California Civil

3   Code § 3439.09(a) does not permit the Receiver to avoid and recover transfers beyond

4   the four years prior to filing the Complaint (transfers from October 30, 2011 through

5   October 30, 2015 are within the four year period).

6          The Receiver was granted authority by the Court to pursue clawback actions as

7   of April 21, 2015 (the SEC Case, Docket No. 72). The Receiver nonetheless waited

8   until October 30, 2015 (over six months later) to file the Complaint against Firestone.

9   The Receiver also waited despite knowing of the Court's findings on September 30,

10   2014 that NASI operated a Ponzi scheme (the SEC Case, Docket No. 14), despite the

11   SEC's pleadings stating that NASI operated as a Ponzi scheme  (the SEC Case,

12   Docket No. 7) and despite the Court reiterating in its Civil Minutes providing

13   authority to pursue clawback actions that the September 30, 2014 Order made the

14   Ponzi scheme finding (the SEC Case, Docket No. 72, p. 3 of 4, "As this Court made

15   clear in its Order of September 30, 2014, NASI operated a Ponzi scheme and paid out

16   large gains to early investors. (*See generally* Order Granting Pls.' Ex Parte Appl.,

17   ECF No. 14.)"). The Receiver's claims as to the transfers taking place more than four

18   years prior to the filing of the Complaint are time-barred.

19   **E.** **The Statute Is Not Extended or Tolled for a Creditor or**

20          **Receiver to Conduct an Accounting.**

21          In his opposition to Firestone's motion to dismiss the First Amended

22   Complaint, the Receiver contended that Civil Code § 3439.09(a) requires a full

23   accounting by the Receiver of funds out from and into NASI before the one year

24   period begins. Notwithstanding the Court's Order on the motion to dismiss, the SAC

25   does not include any allegations as to when the Receiver knew or should have known

26   of the transfers to Firestone, and the SAC instead alleges when the Receiver

27   completed his accounting of all transfers both to and from Firestone (SAC, ¶¶ 15-16).

28   The Receiver's understanding that his date of discovery is triggered only after he

1   completes a transfer of all transfers both to and from Firestone is not supported by the
2   statute or applicable case law.  Adopting the Receiver's contention as to the discovery
3   provision in Civil Code § 3439.09(a) would alter the statute and the applicable case
4   law to toll or extend the statute for creditors and receivers to conduct an accounting of
5   investments, as compared with having knowledge of transfers.  The Receiver confuses
6   the requirements in the statute of limitations for seeking to recover transfers beyond
7   the four-year period pursuant to Civil Code § 3439.09(a), with the ultimate recovery
8   that may be obtained from investors in Ponzi schemes pursuant to Donell v. Kowell,
9   533 F.3d 762 (9th Cir. 2008).  Those are two different concepts, and the Receiver
10  mixes the concepts together without a proper basis to do so.

11        As stated by the BAP in In re Ezra, 537 B.R. 924, 930 (9th Cir. BAP 2015), the
12  BAP was required to interpret California law, "answer any questions of law arising
13  from the Act based on how the California Supreme Court would decide them" and
14  "[i]f the California Supreme Court has not yet reached the issue in question, our job is
15  to predict how the California Supreme Court would decide it." Ezra at p. 930.  The
16  BAP held that "…we predict that the California Supreme Court ultimately will hold
17  that the one-year period under Cal.Civ.Code § 3439.09(a)'s discovery rule does not
18  commence until the plaintiff has reason to discover the fraudulent nature of the
19  transfer." Ezra at p. 934.  The BAP found the California Supreme Court would hold
20  that discovery commenced upon discovery of "the fraudulent nature of the transfer."

21        Although the Receiver attempts to bootstrap the holding in Donell v. Kowell,
22  533 F.3d 762 (9th Cir. 2008) as to how courts should determine ultimate recovery
23  against investors in Ponzi schemes, Kowell does not make any determinations as to
24  the discovery clause in Civil Code § 3439.09(a).  There is nothing in Kowell, in Ezra
25  or in the statute that provides for tolling while a creditor or receiver conducts an
26  accounting.

27
28

1    **F.    The Del Greco Declaration Demonstrates That Evidence of the**

2    **Transfers Was Available Upon the Appointment of the Receiver.**

3        To the extent the Receiver contends that he had no reason to know of transfers

4    to Firestone or other investors upon his appointment, judicially noticeable pleadings

5    show that NASI's bank statements dating back to 2009 were made available to the

6    Court by the SEC as part of public record on September 30, 2014. A declaration filed

7    with this Court by the SEC on September 30, 2014, the declaration of Peter F. Del

8    Greco (Docket No. 13 in Case No. 2:14-cv-07249-SJO) (the "Del Greco

9    Declaration"), states that on or about July 14, 2014, the SEC already had received all

10   bank statements for the bank account from which transfers were allegedly made from

11   NASI to Firestone for the period from January 2009 through June 2014.[18]  Exhibit

12   12A to the Del Grecco Declaration is a declaration as to production of business

13   records of City National Bank to the SEC dated July 14, 2014. The declaration from

14   City National Bank regarding production (Exhibit 12A to the Del Grecco

15   Declaration) includes the account from which the transfers to Firestone were

16   allegedly made (*see* Exhibit B to the complaint) for the time period of January 2009

17   through June 2014. There are only four transfers listed in Exhibit B to the Receiver's

18   complaint that the Receiver claims are subject to clawback that the SEC did not have

19   bank documents regarding as of July 14, 2014.[19]  Those bank statements were offered

20   for the Court's review as part of the determination that NASI operated as a Ponzi

21   scheme. Evidence of transfers going back to January 2009 was obtained and offered

22   to the Court as of September 30, 2014 and the Receiver had this documentation

23   available to him. That the Receiver did not avail himself of the documentation does

24   not toll the statute of limitations in Civil Code § 3439.09(a).

25

26

27

28

---

[18] RJN, Exhibit 6, Del Greco Declaration, p. 4, ¶¶ 13-14 and Exhibit 12A thereto.
[19] As identified in Exhibit B to the Receiver's Complaint and SAC, the four transfers were during November and December 2008 totaling $54,860.50.

1  **G.   The Receiver Admits in His First Report and Recommendations**

2  **That He Received an Investor List and Monthly Investor**

3  **Payments from NASI's Principals Over One Year Prior to Filing**

4  **the Complaint.**

5       The Receiver's First Report and Recommendations admit that the Receiver and

6  his counsel received documentation, including a list of investors and a listing of

7  monthly investor payments, directly from NASI's principals, Gillis and Wishner,

8  during a meeting on October 21, 2014 (which meeting took place over one year prior

9  to the Receiver filing the Complaint):

10       Gillis and Wishner then agreed to meet with the Receiver and two members

11       of his staff at NASI's office with counsel present.  The meeting took place

     on October 21, 2014.  During the meeting, the Receiver and his staff worked

12       with Gillis to locate files on both his computer and one of the NASI

13       employee's computers, including a list of investors that included ATM

     Locations and ATM serial numbers associated with each investor, a list of

14       investors with addresses, templates used when forwarding monthly

15       payments to ATM locations, and monthly investor payments.[20]

16  To the extent that the Receiver contends that he did not know who the investors were,

17  or the payments to investors, the Receiver's First Report and Recommendations

18  admits that the Receiver had that information on October 21, 2014, over one year

19  before the Receiver filed the Complaint.  Further, if the Receiver had any doubt as to

20  whether NASI operated as a Ponzi scheme, the Receiver states in his First Report and

21  Recommendations that the principals of NASI admitted to the Ponzi scheme during

22  the October 21, 2014 meeting and described how the scheme operated:

23       When Gillis was asked if there were more ATM Locations on the lists than

24       actual ATMs, he responded that there were a lot more addresses for ATMs

     than actual ATMs.  Gillis was then asked where these addresses on the list

25       came from and he responded that he would look through the yellow pages,

26       call businesses, and ask if they had an ATM at their location.  If he was told

     the business had an ATM, he would use the address as one for the falsified list

27

28  [20] RJN, Exhibit 7, Receiver's First Report and Recommendations, pp. 10 and 11 of 19
stamped at the top of the pages, lines 26-28 and 1-5.

of ATMs associated with each investor. Gillis also stated the serial numbers for the ATMs assigned to each investor were simply made up.[21]

By October 21, 2014 (over one year prior to the Receiver filing the Complaint), the Court had found that NASI operated as a Ponzi scheme, the SEC had claimed that NASI operated as a Ponzi scheme and NASI's principals admitted to the Receiver and his counsel at an in-person meeting as to the details of the fraudulent scheme. By that same date, the Del Grecco Declaration had offered NASI's bank statements going back to 2009 for the NASI account referenced in Exhibit B to the SAC, and the Receiver had received a listing of investors and a listing of monthly payments to investors directly from NASI's principals.

## IV.

## CONCLUSION

The Receiver has been unable in three iterations of the Complaint to include allegations that support the ability to avoid and recover transfers more than four years prior to filing the Complaint. The Receiver's claims and prayer for relief to avoid and recover transfers taking place more than four years prior to the filing of the Complaint are time-barred and are appropriately dismissed with prejudice.

Dated: February 16, 2016                    BRUTZKUS GUBNER ROZANSKY
                                            SEROR WEBER LLP


                                            By: /s/ Corey R. Weber
                                            _____
                                            COREY R. WEBER
                                            Attorneys for Defendant William
                                            Firestone, individually and as Trustee of
                                            The Firestone Family Trust, and as
                                            shareholder of the dissolved
                                            corporation, Firestone Holdings, Inc.

---

[21] Receiver's First Report and Recommendations, p. 11 of 19 (stamped at the top of the page), lines 6-13.

## **DECLARATION OF COREY R. WEBER**

I, Corey R. Weber, declare:

1.    I am admitted to practice before this Court and am a partner at Brutzkus Gubner Rozansky Seror Weber LLP, counsel for defendant William Firestone, individually and as Trustee of The Firestone Family Trust, and as shareholder of the dissolved corporation, Firestone Holdings, Inc. I make this declaration in support of the Motion to Dismiss.

2.    I have personal knowledge of the facts in this declaration and, if called as a witness, could and would testify competently to these facts.

3.    Pursuant to the Local Rules (Local Rule 7 – 3), I met-and-conferred with Ted Fates of Allen Matkins Leck Gamle Mallory & Natsis LLP, counsel for the Receiver, several times prior to filing the motion to dismiss the Receiver's original Complaint. This included sending a draft motion to dismiss on or about November 24, 2015, as well as several telephone conferences thereafter discussing the arguments in the motion to dismiss, including on November 24, 2015. I had two follow-up calls with Mr. Fates that included discussion regarding the subject matter of the motion and potential resolution of the issues in the motion. The discussions led to the filing of the Receiver's First Amended Complaint. However, the discussions did not obviate the need for the Motion to Dismiss. I have continued discussions with Mr. Fates as to the issues in the motion to dismiss following the filing of the Receiver's First Amended Complaint and Second Amended Complaint. The parties have agreed to mediate the claims in the Second Amended Complaint on March 11, 2016.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration is executed on February 16, 2016, at Woodland Hills, California.

_____
COREY R. WEBER

21

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the **MOTION TO DISMISS THE RECEIVER'S SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES** with the Clerk of the Court for the United States District Court by using the CM/ECF system on **February 16, 2016.**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that I served the foregoing document as follows:

**VIA EMAIL**

Ted Fates, Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
tfates@allenmatkins.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed **February 16, 2016**, at Woodland Hills, California.

/s/ Mela Zepeda
MELA ZEPEDA